STATE OF MINNESOTA | FOURTH JUDICIAL DISTRICT

COUNTY OF HENNEPIN | FOURTH DIVISION

Court File No.: ____________

Jeffery Burridge,

Plaintiff,

vs.

Zoll Medical Corporation,

Defendant.

**SUMMONS**

THE STATE OF MINNESOTA TO THE ABOVE-NAMED DEFENDANT:

YOU ARE HEREBY SUMMONED and required to serve upon the attorneys for Plaintiff an Answer to the Complaint which is hereby served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Dated this 16th day of November, 2006.

HALUNEN & ASSOCIATES

Clayton D. Halunen, Atty. No. 219721
Christopher D. Jozwiak, Atty. No. 0386797
220 South Sixth Street
Suite 2000
Minneapolis, MN 55402
Telephone: (612) 605-4098
*Attorneys for Plaintiff*

SCANNED
DEC 06 2006
U.S. DISTRICT COURT MPLS

EXHIBIT
A

STATE OF MINNESOTA | DISTRICT COURT

COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT

Court File No.: ___________

Jeffery Burridge,

Plaintiff,

vs.

**COMPLAINT AND JURY DEMAND**

Zoll Medical Corporation,

Defendant.

The Plaintiff, Jeffery Burridge, for his Complaint against Defendant, states and alleges as follows:

PARTIES

1. Plaintiff is a resident of the City of Stillwater, County of Washington, State of Minnesota.

2. Upon information and belief, Zoll Medical Corporation (hereinafter "Zoll") is a Massachusetts corporation, doing business in the City of Minneapolis, County of Hennepin, State of Minnesota. Defendant regularly conducts business in Hennepin County and throughout the State of Minnesota.

FACTS

3. Plaintiff was hired by Defendant in December 2002 as a Territory Manager. Plaintiff has an extensive sales background and demonstrated an exemplary performance while employed with Defendant.

4. Defendant was extremely pleased with the performance of Plaintiff and informed Plaintiff that he produced far more results than the former Manager in his position.

5. In March of 2004, Peter Jung, Midwest Regional Manager, instructed Plaintiff to offer the following giveaways to their clients: free cases of electrodes, free batteries, free paddles, free simulators, free training units or AEDs and giveaways in order to give incentive to prefer them over their competitors. Plaintiff understood these kickbacks to be improper but did not challenge the order because he feared retaliation.

6. In January of 2005, Defendant announced a reduction in its sales force. As a result, Defendant asked Plaintiff to take over the Michigan sales territory and move to Michigan.

7. After inquiring with his family, Plaintiff informed his Manager Bruce Keyser that he will not be able to move to Michigan because his children and ex-wife were unable to move away from Minnesota and he was unwilling to leave his children. Mr. Keyser informed Plaintiff that, regardless of his decision to not relocate, he would not be terminated because of his positive performance and that Defendant had no reason to replace Plaintiff. Plaintiff accepted the offer to take over the Michigan sales territory and told Mr. Keyser that he would gladly travel as often as needed. Mr. Keyser was pleased to hear of Plaintiff's acceptance and informed Plaintiff that, as far as he was concerned, he could maintain the arrangement indefinitely.

8. Throughout 2005, Plaintiff was increasingly encouraged and directed to engage in illegal practices, including:

a. Plaintiff was directed by Mr. Jung to provide free Automatic External Defibrillators to clients in order to "get a deal done." Mr. Jung told Plaintiff to do "whatever it takes" to complete sales transactions.

b. Defendant instructed Plaintiff to give kickbacks to physicians, hospitals and medical clinics in order to induce them to purchase Defendant's products over competitors' products. Defendant's Managers would regularly offer ideas at staff meetings as to what sales representatives could offer for free to physicians, hospitals and clinics in order to obtain a sale.

c. Defendant manipulated the AWP of its products to create an artificial higher price that it charged under its government contracts. Defendant sold products to numerous purchasers at a discount, including giving away free items, and the value of the free items would not be included calculated in the total sale price to get the "true," or lowest, price.

Plaintiff knew that such actions were improper but failed to report the activities because his superiors were the ones directing him to engage in the activities.

9. In August of 2005, Defendant asked Plaintiff to "pitch in" with an additional sales territory in Iowa / Wisconsin, working under Northwest Regional Manager, Brett Johns. Plaintiff agreed and began working as a "closer" for both territories.

10. Soon after Plaintiff started working under Brett Johns, he received offensive and pornographic emails from Mr. Johns. Plaintiff was shocked that a Manager

would send the emails but was reluctant to report them to Human Resources for fear of retaliation.

11. On October 27, 2005, Mr. Johns emailed Plaintiff a newspaper article in the Wall Street Journal about illegal kickbacks that Defendant's competitor was providing to their clients. The kickbacks described in the article were identical to the type of kickbacks Defendant was providing to their own clients. Plaintiff called Mr. Johns to discuss the article because he was concerned about Defendant's identical behavior and participation in the same illegal practices. After reading the article, Plaintiff informed Mr. Johns that the illegal activities described in the article were identical to "what transpired with the Iowa accounts before [he] came in." (i.e. the "provision of benefit…to anyone in a position to recommend purchases of defibrillators, pacemakers and related devices.").

12. Plaintiff forwarded the newspaper article to his two accounts in Iowa, and one of his accounts in Michigan. These accounts were ones Plaintiff was experiencing resistance from and he wanted to make clear that he would not be engaging in any of the illegal activities described in the article. Plaintiff then informed Mr. Johns that he had sent the article to the accounts.

13. On November 10 of 2005, Plaintiff informed Mr. Johns that the two Iowa accounts were in jeopardy. Although both of the accounts had been set up by the former sales representative to the area, Mr. Johns verbally berated Plaintiff about the accounts. Plaintiff was surprised at Mr. Johns' hostile reaction, since he had only recently taken over the accounts and the presentations for each had been completed well before he was assigned to the accounts. Immediately thereafter, Mr. Johns informed Plaintiff that he

would no longer be assigned to the Iowa accounts in question. Although the accounts were not yet lost, Mr. Johns then sent an email to Defendant's co-workers, informing them that Plaintiff had lost the accounts. Plaintiff became concerned that he was being set up for termination.

14. On November 14, 2005, Plaintiff informed Human Resources about the obscene emails Mr. Johns had been sending. Plaintiff included two examples of the offensive material. That same day, Mr. Johns emailed Plaintiff, and informed him that he was removed from the Iowa / Wisconsin sales territory.

15. On November 17, 2005, Plaintiff was informed by Human Resources that Steve Flora, Vice President of Sales, would be handling his complaint about Mr. Johns' offensive and pornographic emails.

16. On November 18, 2005, Director of Sales Bob Drabik informed Plaintiff that unless he agreed to move to Wisconsin he would be terminated. Plaintiff was surprised by this ultimatum since he had already informed Defendant that he couldn't move because of his family and offered to travel to any sales territory as often as needed. Because Plaintiff was informed by his Manager that the arrangement was agreeable, he had no reason to believe that his inability to move was anything but a pretext for getting rid of him. Plaintiff was also aware that at least two of Defendant's other employees, Bruce Keiser and Greg Williams, were allowed to work at locations which required travel to and from their respective homes.

17. On November 22, 2005, Plaintiff received a termination letter from Defendant, setting his termination date at the end of the calendar year.

18. Plaintiff has suffered damages in the form of lost wages, lost future income, and pain and suffering as a result of Defendant's illegal conduct.

COUNT ONE
WHISTLEBLOWER VIOLATIONS

19. Plaintiff realleges each and every paragraph of this Complaint.

20. Plaintiff, in good faith, reported what he believed to be violations of federal and/or state law, including, but not limited to federal anti-kickback statutes.

21. Plaintiff was terminated from his employment after making reports, objections and refusals of Defendant's illegal practices.

22. The adverse employment actions as alleged herein constitute violations of Minn. Stat. §181.932 *et. seq.*

23. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of wages and benefits and other serious damages.

COUNT TWO
REPRISAL DISCRIMINATION
IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT

Plaintiff realleges each and every paragraph of this Complaint.

25. Defendant Company engaged in unlawful employment practices involving Plaintiff in violation of the Minnesota Human Rights Act, Minn. Stat. §363.01 *et. seq.* These practices include, but are not limited to, the termination of Plaintiff.

26. Plaintiff was retaliated against in the terms, conditions and privileges of his employment after he complained about sexually explicit, pornographic and obscene emails from his manager.

27. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting his status as an employee because of his complaints.

28. The unlawful employment practices complained above were intentional and were performed by Defendant with malice or reckless indifference to state anti-retaliation laws which protect Plaintiff.

29. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits and other serious damages.

WHEREFORE, Plaintiff respectfully prays:

a. That the practices Defendant complained of herein be adjudged, decreed, and declared to be a violation of the rights secured to Plaintiff by the Minnesota Whistleblower Act and the Minnesota Human Rights Act.

b. Enjoining the Defendant and its employees, officers, directors, agents, successors, assignees, affiliates, merged or acquired predecessors, parent or controlling entities, subsidiaries and all other persons acting in concert or participation with it, from its unlawful acts.

c. That Defendant be required to make Plaintiff whole for its adverse, discriminatory actions through restitution in the form of back pay, with interest of an appropriate inflation factor.

d. That Plaintiff be reinstated to his job or, in the alternative, be awarded front pay and monetary value of any employment benefits he would have been entitled to by Defendant.

e. The Plaintiff be awarded compensatory damages in an amount in excess of $50,000.00 for each of his claims as established at trial.

f. That Plaintiff hereby places Defendant on notice of his intent to seek leave of Court for an award of punitive damages.

g. That the Court award Plaintiff his attorney's fees, costs and disbursements pursuant to state and federal statute.

h. That the Court grant such other and further as it deems fair and equitable.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS WHERE JURY IS AVAILABLE.

Dated this 16th day of November, 2006.

HALUNEN & ASSOCIATES

Clayton D. Halunen, Atty. No. 219721
Christopher D. Jozwiak, Atty. No. 0386797
220 South Sixth Street
Minneapolis, MN 55402
Telephone: 612.605.4098

*Attorneys for Plaintiff*

ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. §549.21 to the party against whom the allegations in this pleading are asserted.

Dated this 16th day of November, 2005.

Christopher D. Jozwiak